IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
July 16, 2024 Session

## DEWAYNE EDWARD HARRIS v. STATE OF TENNESSEE

Appeal from the Circuit Court for Williamson County
Nos. CR-220243, 22CR-16565    Deanna B. Johnson, Judge

_____

## No. M2023-00681-CCA-R3-PC
_____

Petitioner, Dewayne Edward Harris, appeals the denial of his post-conviction petition, arguing that the post-conviction court erred in denying his claim that trial counsel was ineffective for failure to investigate, failure to develop a reasonable trial strategy, and failure to object to the use of Petitioner's nicknames and to testimony regarding statements made by a non-testifying co-defendant. Following our review of the entire record, oral arguments, and the briefs of the parties, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JILL BARTEE AYERS, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and J. ROSS DYER, JJ., joined.

Daniel J. Murphy, Lewisburg, Tennessee (on appeal), and Nichole Dusche, Franklin, Tennessee (at post-conviction hearing), for the appellant, Dewayne Edward Harris.

Jonathan Skrmetti, Attorney General and Reporter; Ronald L. Coleman, Senior Assistant Attorney General and Caroline Weldon, Assistant Attorney General; Stacey Edmonson, District Attorney General (Assistant District Attorney General at post-conviction hearing), for the appellee, State of Tennessee.

# OPINION

## Factual and Procedural Background

*Trial*

Petitioner and three co-defendants, Barry Durene Harris, Jr., Dejon Marquise Gullatt,[1] and Alexzandrea L. Oden, were indicted by a Williamson County grand jury for carjacking with a deadly weapon (count one), carjacking with use of force or intimidation (count two), and aggravated robbery with a deadly weapon (count three). *State v. Harris*, No. M2019-01609-CCA-R3-CD, 2021 WL 673015, at *1 (Tenn. Crim. App. Feb. 22, 2021). Prior to trial, Petitioner's case was severed from Co-defendants Gullatt and Oden, both of whom appeared as witnesses for the State. *Id.* Petitioner filed a pretrial motion to exclude certain evidence, including his prior crimes and gang affiliation and the testimony of non-testifying co-defendants. In response, the State agreed that statements by non-testifying co-defendants would not be introduced and that Petitioner's "gang affiliation [was] not relevant for trial." The agreement did not exclude the use of nicknames. During the trial, several witnesses referred to Petitioner by his gang-related nicknames of "Big Homey" or "Big Whack."

Trial commenced with the charges against Petitioner and Co-defendant Barry Durene Harris, Jr. The victim testified that a few days prior to the incident, she drove Co-defendant Oden to a residence and then waited in the car with Timothy Marsh, the victim's boyfriend, while Co-defendant Oden went inside. *Id.* After Co-defendant Oden returned with a large package, Co-defendant Oden and Mr. Marsh directed the victim to drive to an address the victim did not recognize. *Id.* Once there, Co-defendant Oden and Mr. Marsh entered with the package and came out approximately thirty minutes later without the package. *Id.* Several days later, the victim and Mr. Marsh were at a bowling alley when a police officer approached the victim and stated that her vehicle had been reported as having been involved in a drug transaction. *Id.* at *2. The victim and Mr. Marsh followed the police officer to the parking lot, where Mr. Marsh was arrested for an outstanding warrant. *Id.*

The victim asked Co-defendant Oden for help posting bail for Mr. Marsh's release; Co-defendant Oden agreed and told the victim to meet her at Co-defendant Oden's grandmother's house. *Id.* When the victim arrived at Co-defendant Oden's grandmother's house, she had cash for the bail, her cellphone, and Mr. Marsh's cellphone in the vehicle with her. *Id.* Two men approached her vehicle. *Id.* One man, whom she recognized as

---

[1] As noted by this court on direct appeal, while the indictment spells Mr. Gullatt's last name as "Gullat" in his testimony, he spelled his name "Gullatt." We will use his spelling of his name.

Co-defendant Gullatt, entered the passenger side of the vehicle, held a gun to the victim's head, "demanded everything that [she] got," and asked about the location of the package. *Id.* The second man approached the driver side door and "grabbed the victim by her hair and pulled her out of the car and began striking her face with his hands." *Id.* After the incident, the victim's sister showed the victim a picture of Petitioner, and the victim identified him as the man who pulled her out of the car and beat her. *Id.* at *3. The victim confirmed Petitioner's identification to City of Franklin Detective Bobby Dilworth. *Id.*

Co-defendants Gullatt and Oden testified about their roles in the days leading up to the incident, which they each stated were at the direction of Petitioner. *Id.* at *4-10. Co-defendant Gullatt testified that on the day of the incident, Petitioner ordered him "to get in the car with the victim and demand the box. If she did not have the box, then [Co-defendant] Gullatt was to 'take her out to the woods' and kill her." *Id.* at *9. Because the victim recognized Co-defendant Gullatt, she unlocked her passenger side door as he approached, and he got in the car and asked her where the package was located. *Id.* Co-defendant Gullatt attempted to convince the victim to drive away, but as the victim did so Petitioner "opened the driver side door, pulled the victim out of the car, 'hit[] her with the door of the car' and then punched her." *Id.* The victim ran inside the residence, and Petitioner instructed Co-defendant Gullatt to drive away in the victim's car. *Id.*

Detective Bobby Dilworth responded to the scene and interviewed the victim, who identified two of Petitioner's co-defendants by name. *Id.* Detective Dilworth confirmed that Co-defendant Oden had made a false report of drug activity at the bowling alley. *Id.* at *4. Detective Dilworth obtained a warrant for Petitioner's arrest on the same day as the incident. At trial, trial counsel objected to Detective Dilworth's testimony regarding Co-defendant Gullatt's statement identifying Petitioner, and the trial court sustained the objection. *Id.*

Co-defendant Harris called three witnesses, two of whom were neighbors of Co-defendant Oden's grandmother who had witnessed the incident. *Harris*, 2021 WL 673015, at *10. The third witness, Tena Payne, was the Director of Housing Operations with the Franklin Housing Authority ("FHA"). Ms. Payne stated that the FHA had cameras on the street where the incident occurred and that the cameras retained video for approximately two weeks. She thought the cameras were operational at the time of the incident. The FHA received a request from the Franklin Police Department for the footage of the incident. When Ms. Payne reviewed the footage, she "couldn't see anything." To her knowledge the video had not been preserved. Petitioner did not testify or put on any proof.

The jury convicted Petitioner of the lesser-included offense of joyriding in count one, carjacking as charged in count two, and aggravated robbery as charged in count three. *Id.* at 10. Co-defendant Harris was acquitted of all charges. After the jury announced its

verdicts, Petitioner moved for a judgment of acquittal on the aggravated robbery conviction arguing that the jury's verdicts in counts one and three were inconsistent by finding Petitioner not guilty of using a deadly weapon in count one but guilty of using a deadly weapon in count three. *Id.* The trial court reduced the aggravated robbery conviction to robbery and merged all counts, sentencing Petitioner to an effective thirty-year sentence.

On direct appeal, Petitioner argued, among other assertions, that Detective Dilworth's testimony regarding Co-defendant Gullatt's identification of him violated Petitioner's confrontation rights.[2] *Id.* at *18-19. The State also appealed, arguing that the trial court erred in reducing Petitioner's aggravated robbery conviction to robbery and in merging count three into count two. *Id.* at *19-21. Regarding Petitioner's *Bruton* argument, this court noted that trial counsel's objection to Detective Dilworth's testimony was sustained, but trial counsel did not request a mistrial, even after revisiting the issue at the close of the State's proof. *Id.* at *18-19. Further, this court held that trial counsel "did not seek a curative instruction for tactical reasons, thus precluding plain error relief on appeal." *Id.* at *19. This court upheld Petitioner's convictions in counts one and two but found that the trial court erred in reducing the conviction in count three and remanded for sentencing for the aggravated robbery conviction. *Id.* On remand, the trial court imposed an effective thirty-year sentence, and corrected judgments were entered on August 23, 2021.

*Post-Conviction Hearing*

Petitioner filed a petition for post-conviction relief on April 27, 2022, which was amended on June 13, 2022. As pertinent to this appeal, Petitioner alleged that trial counsel was ineffective by failing to properly and adequately investigate the facts of the case, failing to develop a reasonable trial strategy, and failing to raise timely objections to protect Petitioner's constitutional rights and preserve those issues for appeal.

At the post-conviction hearing, trial counsel testified that he had practiced law since 1971, and his practice was close to fifty percent criminal work at the time of trial. Trial counsel had known Petitioner for at least eight years before trial and had represented Petitioner in other criminal matters. Trial counsel agreed that he had a closer personal relationship with Petitioner than with his other clients. He was concerned about what would happen to Petitioner because of his health, and the emotional attachment "wore on" trial counsel during trial. Trial counsel did not have another attorney assist him with trial and admitted that he had felt "overwhelmed." Trial counsel was on medication for high

---

[2] *See Bruton v. United States*, 391 U.S. 123, 130-37 (1968) (holding that admission at a joint trial of a non-testifying co-defendant's confession implicating the defendant constituted prejudicial error even though the trial court gave an instruction that the confession could only be used against the co-defendant and must be disregarded with respect to the defendant).

blood pressure during trial, but he did not think the medication adversely affected him. Trial counsel testified that he felt as though he should have done something different at trial because Petitioner was convicted while Co-defendant Harris was acquitted.

It was trial counsel's customary practice to meet with clients to review discovery in preparation for trial. He acknowledged that he could not access the material on some of the disks provided to him in discovery, but thought he was able to review "probably all of the discovery or most of it." Trial counsel did not recall whether he reviewed statements from the witnesses called by Co-defendant Harris but explained that he "would assume that" he did not cross-examine them because trial counsel did not think their testimony was prejudicial to Petitioner. Trial counsel explained that he did not call any witnesses at trial because Petitioner did not request that he send any subpoenas. Trial counsel was confident that he relayed the State's twenty-year plea offer to Petitioner, but Petitioner did not want to accept it, and the State rejected trial counsel's counteroffer. Trial counsel was aware that Petitioner had surgery on his hand prior to the incident but did not request Petitioner's medical records. He agreed that the medical records could have been potentially helpful to show that Petitioner was physically incapable of pulling the victim out of the car.

Trial counsel explained that he did not hire a private investigator because he did not believe Petitioner would be able to afford one and was unsure if Petitioner would qualify for funds from the administrative office of the courts because Petitioner's wife was employed and Petitioner had assets. Trial counsel did not attempt to retrieve potential surveillance footage of the incident but noted that Co-defendant Harris called a witness who testified that no surveillance footage had been recovered. Trial counsel agreed that he objected to Detective Dilworth's testimony pertaining to Co-defendant Gullatt's statement that implicated Petitioner but did not request a mistrial.

Regarding the pretrial order to exclude evidence of gang affiliation, trial counsel explained that the order did not "do any good" because the State and Detective Dilworth were "out of control." Trial counsel agreed that the State referred to Petitioner by his nicknames during its opening statement and that he should have "at least" requested a sidebar at that time. He also described his cross-examination of Detective Dilworth as "very painful" because Detective Dilworth was "creative in trying to answer the questions in a way that would bring up [Petitioner's] past or in some way insinuate gang activity or other illegal activity." He recalled that he made the decision not to continue to object to avoid drawing the jury's attention to it but stated that "in retrospect, [he] should have asked for a mistrial."

Trial counsel agreed that the victim's testimony was inconsistent regarding the injuries to her right arm when Petitioner pulled her from the left, or driver side of the car.

Trial counsel explained that with "20/20" hindsight, he should have questioned her more and could not explain why he did not.

Trial counsel stated "[i]n looking back if [he] had known ahead of time of . . . this constant influx of testimony that [he] thought was going to be excluded by agreement with the State, . . . [he] would have been more on [his] feet . . . objecting and asking for a mistrial."

On cross-examination, trial counsel did not recall whether he spoke to Petitioner about hiring a private investigator but reiterated that based on his knowledge of Petitioner's financial assets, he did not believe Petitioner would qualify for public funding. In response to a question from the post-conviction court about Petitioner's medical records, trial counsel said he believed he would have been obligated to disclose the medical records to the State, even if they were prejudicial to Petitioner. Trial counsel agreed that the order excluding reference to Petitioner's gang affiliation did not specifically mention the use of nicknames, but in his opinion, the order "infers that." He further stated that he should have moved for a mistrial during the State's opening statement because "it was clear they were going to continue to use [nicknames]."

On redirect examination, trial counsel expressed regret that he did not obtain and introduce Petitioner's medical records. After the post-conviction court informed trial counsel that he would not have been required to disclose the medical records if they were not favorable to Petitioner, trial counsel stated that it was "bad judgment" to not request the records.

Petitioner testified that he viewed trial counsel as a friend and stated that he had "no hard feelings" toward trial counsel. Petitioner was satisfied with trial counsel's representation in previous cases, but trial counsel was "not himself" during trial in this case. Petitioner expressed his concerns about trial counsel to family members, but he had already paid trial counsel. Petitioner explained that he attempted to communicate his dissatisfaction to trial counsel, but trial counsel did not listen.

Petitioner testified that he spoke with trial counsel on the phone only to make fee payments or to discuss court dates. He only met with trial counsel to make payments. Petitioner did not have any other cases pending and was no longer affiliated with a gang at the time of trial. Petitioner stated that he told trial counsel about the surgery he had prior to trial and showed a scar on his hand to the post-conviction court. While he could not remember the exact date, Petitioner testified that he had surgery on his hand at "the end of June or the . . . very beginning of July" 2017.

On cross-examination, Petitioner stated that trial counsel did not consult with him regarding the motion to exclude evidence of his prior crimes and gang affiliation, and the testimony of non-testifying co-defendants, other than at trial when trial counsel "said that wasn't supposed to have been brought up." Petitioner did not recall trial counsel speaking with him about a plea offer, and Petitioner did not authorize a counteroffer. Petitioner expressed that he likely would have accepted a twenty-year plea offer. On redirect examination, Petitioner recalled attending multiple court hearings, but he was not sure what was discussed at each hearing.

After a brief recess for Petitioner to review clinical notes dated July 10, 2017, regarding the surgery on his hand, Petitioner was recalled. The clinical notes indicated that Petitioner's right hand was in a splint because he had injured his thumb. The notes also stated that Petitioner had "a hard time even writing his name" but did not indicate that Petitioner was otherwise impaired in the use of his hand. The notes documented that Petitioner's doctor recommended surgery on his hand, but the surgery would be scheduled and performed at a later date when Petitioner returned from traveling.

On April 18, 2023, the post-conviction court entered a written order denying Petitioner relief. The post-conviction court summarized the evidence presented at the post-conviction hearing, specifically noting that the order to exclude reference to gang affiliation did not prohibit reference to nicknames and that Co-defendant Harris called a witness who testified that there was no surveillance footage of the incident. Further, the post-conviction noted that trial counsel "testified he was concerned a request for medical records would backfire if they were unfavorable to Petitioner." The post-conviction court also credited trial counsel's testimony that he objected at least once to the State's use of Petitioner's nicknames but stopped objecting to avoid drawing further attention to the nicknames; the post-conviction court found that to be a reasonable strategic choice that it would not second-guess.

The post-conviction court found that Petitioner was precluded from establishing prejudice based on trial counsel's failure to object or seek relief for a *Bruton* violation because, on appeal, this court did not find plain error based on "essentially the same" standard of proof. The post-conviction court further found that trial counsel should have inquired about Petitioner's ability to pay for a private investigator or attempted to obtain public funds, but that Petitioner failed to establish that a private investigator would have uncovered information helpful to his defense. Finally, the post-conviction court found that trial counsel's failure to request Petitioner's medical records might constitute deficient representation under other circumstances, but there "was a wealth of evidence mounted against Petitioner, and it is not clear to the [c]ourt that testimony about Petitioner's surgery would have changed the outcome."

Petitioner's timely appeal is now before this court.

**Analysis**

On appeal, Petitioner asserts that the post-conviction court erred when it concluded that trial counsel provided constitutionally effective assistance of counsel. Specifically, Petitioner asserts that trial counsel's failure to obtain Petitioner's medical records and surveillance footage of the incident constituted failure to adequately investigate the facts of the case, that trial counsel failed to develop a reasonable trial strategy based on Petitioner's medical records, and that trial counsel failed to object each time he was referred to by his nicknames. The State argues that the post-conviction court did not err in denying Petitioner relief. We agree with the State.

The right to effective assistance of counsel is safeguarded by both the Constitution of the United States and the Constitution of Tennessee; therefore, it is cognizable under the Post-Conviction Relief Act. U.S. CONST. amend VI; TENN. CONST. art. I, § 9; T.C.A. § 40-30-103 ("Relief under this part shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States.").

A claim of ineffective assistance of counsel presents a mixed question of law and fact. *Phillips v. State*, 647 S.W.3d 389, 400 (Tenn. 2022) (citing *Dellinger v. State*, 279 S.W.3d 282, 294 (Tenn. 2009)). Thus, an appellate court is bound by the factual findings of the post-conviction court unless the evidence in the record preponderates against those findings; but the post-conviction court's application of law to those factual findings is reviewed de novo with no presumption of correctness. *Howard v. State*, 604 S.W.3d 53, 57 (Tenn. 2020) (citing Tenn. R. App. P. 13(d)); *Fields v. State*, 40 S.W.3d 450, 457-58 (Tenn. 2001). A petitioner alleging the ineffective assistance of counsel "shall have the burden of proving the allegations of fact by clear and convincing evidence." T.C.A. § 40-30-110(f); *Dellinger*, 279 S.W.3d at 291.

When a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show that (1) counsel's performance was deficient and (2) the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Butler v. State*, 789 S.W.2d 898, 899 (Tenn. 1990); T.C.A. § 40-30-110(f). Failure to satisfy either prong is sufficient to deny relief. *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004); *Finch v. State*, 226 S.W.3d 307, 316 (Tenn. 2007). Deficient performance is representation that falls below "an objective standard of reasonableness" as measured by prevailing professional norms. *Kendrick v. State*, 454 S.W.3d 450, 457 (quoting *Strickland*, 466 U.S. at 688). To show prejudice, a petitioner must demonstrate that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding

would have been different. *Strickland*, 466 U.S. at 694; *Kendrick*, 454 S.W.3d at 458. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Kendrick*, 454 S.W.3d at 458 (citing *Williams v. Taylor*, 529 U.S. 405, 405-06 (2000)).

In his brief, Petitioner asserts that the post-conviction court erred in denying relief on his claim that trial counsel failed to adequately investigate the facts by failing to obtain surveillance footage of the incident, which would have shown that Petitioner "was not the individual the victim described as pulling her out of her car." However, Petitioner did not make this claim in either his original or amended petition for post-conviction relief; accordingly, the post-conviction court did not make any legal findings regarding trial counsel's failure to obtain the surveillance footage. Therefore, the issue is waived. *See Holland v. State*, 610 S.W.3d 450, 458 (Tenn. 2020) (noting that an issue is waived if it is not either raised in the post-conviction petition or "argued at the post-conviction hearing and decided by the post-conviction court without objection").

Next, Petitioner asserts that the post-conviction court erred in denying relief for his ineffective assistance of counsel claim that trial counsel failed to obtain medical records regarding Petitioner's injured hand and to develop a reasonable trial strategy based on those records. Specifically, Petitioner asserts that his medical records would have shown that he was physically incapable of pulling the victim out of her vehicle and beating her. The post-conviction court credited trial counsel's testimony that he did not request the records because he was under the assumption that he would have been obligated to disclose Petitioner's medical records to the State, even if they were prejudicial to Petitioner. Further, the post-conviction court found that admission of Petitioner's medical records was not likely to have changed the outcome of the trial because of the "wealth of evidence mounted against Petitioner[.]" The record does not preponderate against the post-conviction court's findings of fact.

While Petitioner presented clinical notes dated approximately two weeks prior to the incident, the clinical notes reflected only that surgery on Petitioner's right hand was recommended. Because no medical records were subpoenaed or introduced at the post-conviction hearing, Petitioner failed to adequately present evidence to support his claim for relief. *See Black v. State*, 794 S.W.2d 752, 757-58 (Tenn. Crim. App. 1990) (noting that when a petitioner asserts that trial counsel was deficient for failing to adequately investigate the facts, the petitioner must present what he asserts would have been found with proper investigation).

Further, we do not have to determine whether trial counsel's failure to obtain Petitioner's medical records based on his mistaken belief that he would have been obligated to turn them over to the State was deficient because Petitioner has failed to show that he

was prejudiced. *See Finch*, 226 S.W.3d at 316 ("[I]f this Court determines that either prong is not met, we may forego consideration of the other prong."). Both the victim and Co-defendant Gullatt positively identified Petitioner as the man who pulled the victim out of the car and beat her. Additionally, another eyewitness who testified at trial positively identified Petitioner as one of the men that approached the victim's car shortly before the attack. Even if the victim's credibility could have been impeached based on inconsistencies between her injuries and her version of events, the jury could have reasonably relied on the two other identifications. There is not a reasonable probability that Petitioner's medical records would have changed the outcome of the case considering the "wealth of evidence" against Petitioner. Petitioner is not entitled to relief on this basis.

Finally, Petitioner asserts that the post-conviction court erred in denying relief for Petitioner's claim that trial counsel was deficient for failing to object to Detective Dilworth's testimony regarding Co-defendant Gullatt's statement and the continued use by the State's witnesses of Petitioner's nicknames. Petitioner further asserts that he was prejudiced because "a trial in which his co[-]defendant enjoyed an acquittal could not have possibly been won due to all of the irrelevant and deliberate references to material the State had agreed not to ever reference[.]"

The record supports the post-conviction court's determination that trial counsel's decision not to object to the use of Petitioner's nicknames was a strategic one that this court will not second-guess. *See Robinson v. State*, No. W2022-00048-CCA-R3-PC, 2023 WL 387076, at *6 (Tenn. Crim. App. Jan. 25, 2023) (holding that trial counsel's decision not to object to use of the defendant's nickname, "Trigger Man," to avoid bringing further attention to the nickname was a strategic decision that this court would not second-guess), *perm. app. denied* (Tenn. Apr. 17, 2023). Additionally, Petitioner failed to establish that he was prejudiced. The jury heard Petitioner's nicknames; there was no evidence that the nicknames were gang-related. Nicknames alone are not prejudicial. *See State v. Jackson*, No. E2014-01387-CCA-R3-CD, 2015 WL 6756318, at *8-10 (Tenn. Crim. App. Nov. 5, 2015) (holding that the defendant's nicknames, in and of themselves, were not prejudicial even though reference to the defendant's gang activity was excluded).

Further, the record supports the post-conviction court's determination that Petitioner is precluded from establishing prejudice based on the alleged *Bruton* violation because on direct appeal, this court did not find any plain error as to the failure to object or seek a curative instruction. *See Harris*, 2021 WL 673015, at *19; *Owens v. State*, No. M2009-00558-CCA-R3-PC, 2010 WL 1462529, at *6-7 (Tenn. Crim. App. Apr. 13, 2010) (citing *Mathis v. State*, No. M2006-02525-CCA-R3-PC, 2008 WL 1850800, at *10-11 (Tenn. Crim. App. Apr. 25, 2008)) (holding that the standard to establish prejudice in a post-conviction proceeding is essentially the same as the standard to establish entitlement to plain error relief).

Petitioner is not entitled to relief.

## Conclusion

For the foregoing reasons, the judgment of the post-conviction court is affirmed.


_____
JILL BARTEE AYERS, JUDGE